# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| JASON LEE KELL | ) | CASE NO. 11-71388 |
| REBECCA ANN KELL | ) | |
| | ) | |
| Debtors. | ) | |

___

| | | |
|---|---|---|
| JASON LEE KELL | ) | |
| REBECCA ANN KELL | ) | |
| | ) | |
| Movant | ) | |
| | ) | MOTION FOR REDEMPTION |
| v. | ) | OF VEHICLE |
| | ) | |
| C & F FINANCE COMPANY | ) | |
| | ) | |
| Respondent. | ) | |

___

## MEMORANDUM DECISION

The matter before the Court is the Debtors' contested Motion for Redemption of Vehicle (the "Redemption Motion") with respect to a 2006 year model Chrysler PT Cruiser motor vehicle which they acquired by means of financing provided to them by C & F Finance Co. ("C&F"). An evidentiary hearing was held on November 2, 2011 at which time Mr. Kell appeared with Debtors' counsel, Robert T. Copeland, Esq., and C&F appeared by its local counsel, John J. Gifford, Esq. The precise issue presented is the proper redemption value for the PT Cruiser. At the conclusion of the hearing, the Court took the Redemption Motion under advisement.

FINDINGS OF FACT

The Court makes the following findings of fact with respect to the Motion:

1. The Debtors filed their Chapter 7 bankruptcy petition with this Court on June 29, 2011 which included a Statement of Intention pursuant to 11 U.S.C. § 521(a)(2) that advised of their decision to retain the PT Cruiser and reaffirm the debt it secured owing to C&F.

2. In both Schedules B and D to that petition they valued the PT Cruiser at $4,575. In the latter schedule they represented the debt owing to C&F as being $9,350 and the unsecured portion of the debt as being $4,775. They did not claim any exemption for the vehicle which certainly is not surprising in that it was apparent that there was no equity in the PT Cruiser.

3. This Court's notice to creditors of the bankruptcy filing advised that the first meeting of creditors would take place on July 28, 2011.

4. On July 27, 2011 C&F filed a motion to obtain relief from the automatic stay with respect to the PT Cruiser (the "Relief Motion"). No response to the motion was filed and on August 22, 2011 a default order granting that motion was entered by this Court.

5. On August 17, 2011, the Debtors filed the Redemption Motion asserting that a proper redemption value would be "no greater than $4,575." On August 26 C&F filed an objection to that motion which noted, however, that it did not object to redemption "so long as the redemption is in an amount agreeable to C&F." In such objection it claimed that the value of the PT Cruiser on the filing date was $9,250 and on July 26 (the day prior to the date it filed the Relief Motion) such value was $8,900.

6. The Redemption Motion was originally noticed to be heard on September 21, 2011 but the hearing date was continued twice at the request of the parties to allow C&F an

opportunity to inspect the vehicle, although there is no indication that it ever in fact did so prior to the actual hearing date of November 2nd.

7. On September 12 the Chapter 7 Trustee filed a Report of No Distribution. On October 13, 2011 this Court entered a discharge order for both Debtors.

8. The Debtors have docketed several pictures which have been admitted into evidence showing the interior condition of the vehicle, which appears to be in very poor condition. Mr. Kell also testified about the mechanical condition of the car, which he described as bad. Among other things, the PT Cruiser needs new tires and windshield wiper blades, its air conditioning is not running and it is currently out-of-inspection. Mr. Kell testified that the car could not pass inspection in its current condition. He further testified that the vehicle has almost 113,000 miles on its odometer and that the paint is beginning to peel on the exterior of the vehicle. There is no dispute that the vehicle is used for normal family and household purposes. Mr. Kell further recounted that he and his wife purchased the PT Cruiser in February of 2008 at a price of $10,200. The Debtors filed an exhibit to their Redemption Motion which purported to be a "NADAguides.com Price Report" valuation for the PT Cruiser with 107,500 miles as of June 20, 2011 as follows: "Rough Trade-In $3,575, Avg. Trade-In $4,575, Clean Trade-In $5,400, and Clean Retail $7,875." Each of these valuations reflects an across-the-board deduction of $1,450 for the high mileage adjustment of 107,500 miles. The Debtors did not seek, however, to get this report admitted into evidence at the hearing, instead relying upon Mr. Kell's testimony about the numerous issues with the vehicle and his opinion as to its value, which he stated was about $2,000 at the time of the hearing. Mr. Kell stated that in formulating his opinion he had relied upon his own knowledge of the vehicle's condition and various pricing guides but had not had it

appraised by anyone having experience in the area of valuing motor vehicles and who had actually examined the PT Cruiser.

9.  C&F did not offer any witness on its behalf who had inspected the PT Cruiser and could offer an opinion as to its value, but did seek the admission of its own NADA valuation of the vehicle, which was marked for identification as Exhibit A.  Upon objection the Court denied admission of such exhibit as to the valuation of the vehicle because it did not contain any adjustment for the vehicle's mileage and its valuation assumptions were not demonstrated to be applicable to the Debtors' vehicle.  The exhibit was admitted, however, for the limited purpose of assessing the Debtor's credibility.  It may also constitute an admission.  The values contained in C&F's exhibit, however, after taking into account the mileage adjustment, are really not much different than the values contained in the document filed by the Debtors in support of their Redemption Motion.  C&F's figures, without any mileage adjustment, as of July 26, 2011 are $4,700 (Rough Trade-In), $5,675 (Avg. Trade-In), $6,475 (Clean Trade-In), and $8,900 (Clean Retail).  If these values are reduced by the same $1,450 mileage adjustment contained in the Debtors' filing, the resulting figures are $3,250, $4,225, $5,025, and $7,450, respectively.

10.  This Court's notice of the Debtors' bankruptcy filing requested that no creditor file a proof of claim unless subsequently advised to do so and neither C&F nor any other creditor has filed any proof of claim in this case.

11.  The Court finds by a preponderance of the evidence that the condition of the PT Cruiser is such that it could only be considered to be in "rough" condition and is materially worse than even average condition.  Accordingly, it finds that, based solely on the evidence presented at the hearing and/or accompanying the Redemption Motion, such vehicle has a

liquidation value of $3,575 and a retail value of $6,050 [$7,875 less $1,825 (the difference between $5,400 clean trade-in and $3,575 rough trade-in values)].  Utilizing the figures contained in C&F's exhibit, adjusted for the mileage factor and "rough" versus "clean" trade-in values, yields corresponding liquidation and retail values of $3,450 and $5,875, respectively.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984.  The Court further concludes that the determination of the value of a secured claim upon property of the bankruptcy estate for the purpose of determining a redemption motion pursuant to 11 U.S.C. § 722 is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(O) as a proceeding "affecting . . . the adjustment of the debtor-creditor . . . relationship[.]"

The Bankruptcy Code provides in § 722 a right to individual debtors to redeem tangible personal property "intended primarily for personal, family, or household purposes" from a lien secured by such property.  The language of the statute reads as follows:

> An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien in full at the time of redemption.

This Court has had occasion previously to deal with a similar motion seeking a determination of redemption value for a debtor's personal motor vehicle. In its decision in the case of *In re Watkins*, 04-74730 (Bankr. W.D. Va. March 30, 2005)[1], this Court ruled that the liquidation value of collateral, in the absence of any evidence that the creditor might reasonably anticipate being able to obtain more than liquidation value, was the proper standard of valuation for a redemption motion and that the valuation ought to be determined as of the filing date. *See also In re Allen*, 240 B.R. 231, 236-37 (Bankr. W.D. Va. 1999). Furthermore, the debtor bears the burden of proving that the property is worth less than the amount owing to the creditor which is secured by a lien upon such property. *See Watkins*, slip op. at 2; *In re Brown*, 244 B.R. 603, 610-11 (Bankr. W.D. Va. 2000). Since the date of that decision in *Watkins*, however, § 506 of the Bankruptcy Code dealing generally with the subject of "Determination of secured status" has been amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") by the addition of a new sub-section (a)(2), which reads as follows:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. §506(a)(2). Post-BAPCPA decisions seem to be fairly consistent that this amendment has changed the previous legal landscape with respect to § 722 redemptions and that now the correct standard is "replacement" value rather than liquidation value. *See In re Pearsall*, 441

---

[1] This Decision can be found on the Court's website, www.vawb.uscourts.gov/Opinions.

B.R. 267, 270 (Bankr. N.D. Ohio 2010); *In re Ayres,* 2010 WL 652825, at *4-5, 2010 Bankr. Lexis 519, at *11-12 (Bankr. ND. Cal. Feb. 16, 2010); *In re Ortiz*, 2007 WL 1176019, at *2, 2007 Bankr. Lexis 1286, at *3 (Bankr. S.D. Fla. Feb. 27, 2007). In light of this Court's prior ruling in *Watkins* that the valuation for a redemption motion is to be determined as of the filing date and the explicit language of the first sentence of § 506(a)(2) ("replacement value . . . as of the date of the petition"), the Court will continue to adhere to that principle.[2]

Statements contained in the schedules of a bankruptcy debtor can constitute binding admissions of the factual matters set forth in such schedules. *See Larson v. Groos Bank,* 204 B.R. 500, 502 (W.D. Tex. 1996); *In re Kaskel*, 269 B.R. 709, 715-16 (Bankr. D. Idaho 2001); *In re Bohrer*, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001); *Matter of Musgrove*, 187 B.R. 808, 812-13 (Bankr. N.D. Ga. 1995); 2 Hon. Barry Russell, *Bankruptcy Evidence Manual* § 801.22, at 873-76 (2010-11 ed.). In this case the Debtors' schedules represent that the value of the PT Cruiser as of the filing date was $4,575.

## DECISION

On November 15, 2011 the Court upon its own request conducted a telephonic conference with counsel of record for the parties (Mr. Copeland and Eric D. White, Esq.) as to any comment which they wished to make upon the evidence and their positions with respect to

---

[2] *Accord In re Morales*, 387 B.R. 36, 47 (Bankr. C.D. Cal. 2008); *In re Brown*, 2006 WL 3692609, at *3, 2006 Bankr. Lexis 713, at *7-8 (Bankr. D. S.C. Apr. 24, 2006). The Court recognizes that language in the second sentence of § 506(a)(2) referencing "the age and condition of the property at the time value is determined" raises some doubt on this point and has led at least one court to rule that the value on the hearing date is the correct rule. *In re Hauser*, 405 B.R. 684, 686 (Bankr. S.D. Fla. 2009). *Collier* also appears to adopt this interpretation as well. *See* 6 *Collier on Bankruptcy* ¶ 722.05[1], at p. 722-11 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

the valuation standard to be utilized. Both of them, while not agreeing on the proper amount, took the very practical and forthcoming approach that the liquidation value of the PT Cruiser was the appropriate standard to be used as best representing what C&F might reasonably obtain for the vehicle if it were to exercise its UCC repossession and sale rights in such vehicle. Although the evidence would justify a conclusion that the present liquidation value of the PT Cruiser is something less than the scheduled value of that vehicle, the Court concludes that the Debtors have admitted that the car's value as of the petition filing date was $4,575 and that they are bound by such figure for the purpose of the Redemption Motion. An order granting that motion in such amount, provided that they pay such amount in full to C&F within thirty days of the date of this decision, will be entered contemporaneously herewith.

DECIDED this 17th day of November, 2011.

*/s/ William F. Stone, Jr.*
UNITED STATES BANKRUPTCY JUDGE